## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

HENRY JOSEPH JAQUEZ,  )
           )
    Plaintiff,   )
           )
vs.          )  Case No.  CIV-11-1406-F
           )
JUSTIN JONES, et al.,   )
           )
    Defendants.  )

## REPORT AND RECOMMENDATION

Plaintiff has brought the present action complaining of alleged constitutional violations by various individuals during his incarceration at the Lawton Correctional Facility (LCF). Doc. 1. The matter has been referred to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B), (C).

## I.     Plaintiff's complaint.

In the first of four counts, Plaintiff complains of excessive force in violation of the Eighth Amendment – his arm was twisted and slammed with the flap of his food tray slot – by various named Defendants on October 23, 2011. *Id*. at 3, 8. His second count is another Eighth Amendment claim of excessive force, this time on October 24, 2011, as he was being escorted from medical back to the segregation unit after being examined for injuries sustained during the incident complained of in Count I. *Id*. at 3, 9. Plaintiff maintains that after learning he

was being moved to a different cell and that his property was to be taken, he sat down and demanded to see a psychiatrist. *Id.* He complains that various named Defendants forced him to his stomach and shackled him and that he also sustained additional injuries during this episode. *Id.* at 9. Once in his cell, Plaintiff contends that Defendants picked him up and dropped him, twisted his handcuffs, choked and shackled him, and then left him for one hour. *Id.* He claims the excessive force continued as Defendants cut off his clothes and then left him in his cell for eight days with no clothing, bedding, showers, hygiene supplies, writing materials, or medical attention. *Id.*

The third count of the complaint asserts deliberate indifference through the denial of medical care from October 24, 2011, until November 1, 2011. *Id.* at 4, 11. Plaintiff maintains he had a number of visible injuries and ailments, causing him to "declare[] a medical emergency for 8 days straight" and that Defendants "simply disregarded my serious risk of harm." *Id.* at 11. He also alleges Defendants failed to treat him for internal bleeding until November 21, 2011. *Id.*

Through his final count, Plaintiff complains of cruel and unusual punishment from October 24, 2011, until November 1, 2011. *Id.* at 12. He alleges he suffered "cold isolation" in his cell with no clothing, blanket, pillow, sheets, hygiene supplies, showers, outside recreation, medical supplies, legal work,

2

writing supplies, shower shoes, paper, or any religious materials. *Id.* He contends he received only four pieces of bread and a small package of sardines three times a day and also claims he was not permitted to send or receive mail. *Id.* Finally, Plaintiff alleges that Defendant Correctional Officer Frazier taunted him during this eight-day period. *Id.*

In the portion of the form complaint asking whether administrative relief was sought in connection with the claims he had asserted, Plaintiff answered in the negative, explaining he was not allowed writing supplies until seven days after the alleged incidents and that a request to staff must be filed within those seven days. *Id.* at 5. He also stated he was on grievance restriction and, accordingly, was unable to file a grievance or receive a response to a request to staff. *Id.* He claims he was "frustrated severely" in obtaining administrative relief. *Id.*

## II.   Relevant case history.

In response to this court's order and in accordance with the procedure the Tenth Circuit established in *Martinez v. Aaron,* 570 F. 2d 317 (10th Cir. 1978), LCF filed a Special Report. Doc. 32. Subsequently, on motion by Defendant Justin Jones, this court dismissed Plaintiff's claim for monetary relief against Defendant Jones in his official capacity with prejudice and dismissed the remaining claims without prejudice. Doc. 43 (Order of United States District

Judge Stephen P. Friot).  All remaining Defendants filed a Motion for Summary Judgment/Motion to Dismiss and an opening brief.  Docs. 33, 56, and 57. Following several requests by Plaintiff seeking extensions of time to respond to that motion – requests grounded, in part, on the need to conduct discovery – United States Magistrate Judge Bana Roberts directed Plaintiff "to respond to that portion of Defendants' motion regarding his alleged failure to properly exhaust his administrative remedies prior to filing this lawsuit." Doc. 47, at 2. Plaintiff has so responded, Doc. 53, and Defendants have filed a reply.  Doc. 58.

Following a review of the briefs and other pertinent filings, the undersigned recommends that Defendants' motion for summary judgment be granted for the reason that Defendants have affirmatively established that Plaintiff failed to properly exhaust his administrative remedies prior to the filing of this lawsuit.

## III.   Standard of review.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted).  And, while the court liberally construes a pro se plaintiff's complaint, a pro se plaintiff must

4

adhere to the same rules of procedure that are binding on all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, the court requires a pro se plaintiff to strictly adhere to the requirements of Fed. R. Civ. P. 56. With respect to those requirements, the Supreme Court has determined that

> the plain language of Rule 56 . . . mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when a defendant asserts an affirmative defense – such as the failure to exhaust administrative remedies – in a motion for summary judgment, the defendants "must demonstrate that no disputed material fact exists regarding [that] the affirmative defense." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

5

## IV.   Analysis.

### A.   Exhaustion of administrative remedies.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner exhaust all available administrative remedies before resorting to a § 1983 action in federal court.  Specifically, 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.*

In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).   A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure.  *Id.* at 218.  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002).  "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir.

2007).  Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

### B.   Defendants' arguments and evidence.

Defendants maintain – and Plaintiff does not argue otherwise – that the Oklahoma Department of Corrections ("DOC") Offender Grievance Process, OP-090124 required Plaintiff to exhaust his administrative remedies prior to initiating this lawsuit.  Doc. 32, Att. 21 ("Grievance Process"); Doc. 53, Exhibit 7, at 2 - 19.  This process requires an initial, informal attempt to resolve a complaint by talking with the case manager, supervising employee, or other appropriate staff.  Grievance Process at IV.A.  If the matter remains unresolved, the inmate must then submit a written "Request to Staff," briefly but completely describing his complaint.  *Id*. at IV.B.1.  Should the informal attempts at resolution fail, the inmate's next step is submission of an "Offender Grievance Report Form."  *Id*. at V.A.  An unfavorable response to the grievance may then be appealed to the Administrative Review Authority or Chief Medical Officer, as appropriate.  *Id*. at VII.  The ultimate ruling of the Administrative Review Authority or Chief Medical Officer concludes the administrative process available to an inmate through the Oklahoma Department of Corrections.  *Id*. at VII.D.

The Grievance Process contains additional administrative grievance

7

requirements for an inmate who has been placed on grievance restriction for abuse or misuse of the grievance process. *Id.* at IX.B. When submitting a grievance, an inmate on grievance restriction must show cause why he or she should be permitted to grieve through an affidavit which must meet certain requirements. *Id.*

In support of their affirmative defense of failure to exhaust, Defendants first point to Plaintiff's statement – made in his complaint under penalty of perjury – that he did not seek administrative relief because he could not file a timely request to staff during his confinement from October 24 through November 1 and, thereafter, because he was on grievance restriction. Doc. 33, at 20-22. Defendants note that the investigation conducted in connection with the Special Report revealed Plaintiff did file a request to staff on October 25 with regard to his Count I excessive force claim, Doc. 32, Att. 22, as well as a medical request on October 27 in which he complained about his injuries. *Id.* at Att. 25. Plaintiff subsequently filed a grievance on November 13 as to the excessive force issues raised by the request to staff, *id.* at Att. 23; the grievance was returned unanswered because Plaintiff was on grievance restriction and had not included the proper documentation with his grievance. *Id.* at Att. 24.

He also filed another grievance November 13 complaining of lack of medical treatment for his injuries. *Id.* at Att. 26. He contended that he was "not allowed

8

to write [request to staff] or Medical Request do to restriction of paper." *Id.* This grievance was also returned unanswered because Plaintiff was on grievance restriction and had not included the proper documentation with his grievance. *Id.* at Att. 27. With regard to these two unanswered and returned grievances, the verified findings of the investigation demonstrate that Plaintiff did not make any attempt to resubmit those grievances in the requisite manner. *Id.* at 12-15.

In connection with these grievance filings – and with Plaintiff's exhaustion record in general – Defendants also rely on two affidavits. In the first, Mike Murray, a Nurse Manager in the Medical Service office of the DOC, stated he "reviewed the offender medical grievance log and the individual offender grievance files maintained by the Medical Services office" and that "[t]he medical appellate review authority has not received any grievance appeals, or any other correspondence, from Henry J. Jaquez, DOC # 379100, between October 23, 2011 and May 9, 2012." *Id.* at Att. 28. In the second affidavit, Debbie L. Morton, the DOC's Manager of the Administrative Review Unit, stated her position gave her access to offender grievance records maintained in Administrative Review and that a search of Plaintiff's records showed "he has not filed a grievance to Administrative Review Unit regarding excessive force or conditions of confinement from the time frame of October 23, 2011 through November 24, 2011." *Id.* at Att. 29.

Defendants' evidence establishes that Plaintiff did not complete the grievance process for any of the claims he asserts in his complaint.  And, while Plaintiff maintains that Defendants prevented him completing the process, he does not deny that he failed to complete it.  Doc. 53.  Thus, by establishing that Plaintiff did not complete the administrative grievance process as to any of his four claims, Defendants have met their initial burden of demonstrating that no disputed material fact exists regarding their affirmative defense of failure to exhaust.  Accordingly, Plaintiff must now "demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564.

The undersigned's review of the filings in this action discloses the following allegations advanced, and evidence submitted, by Plaintiff with regard to his exhaustion efforts.

### C.    Plaintiff's arguments and evidence.

In his verified response brief, Plaintiff argues generally – and correctly – that he was only required to exhaust available administrative remedies.  Doc. 53, at 4.  If "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Jones v. Little,* 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted).

Maintaining that he "did exhaust what was 'available,'" Plaintiff first calls the court's attention to his placement in therapeutic seclusion on October 24. Doc. 53, at 4.  As an apparent aside – as it has no bearing on the issue of administrative exhaustion – he complains of a violation of DOC policy regarding improper procedures in the seclusion process.  *Id.*  Of relevance is his averment that while in therapeutic seclusion he "was placed on numerous restrictions which included 'paper restriction' and is proof . . . [of] how [he] was deprived . . . of life's basic nessecities [sic], which . . . include[s] <u>writing material</u>."  *Id.*  As his proof of this contention, he references his Exhibit 6, which is a LCF document labeled as *Therapeutic Seclusion Conditions/Precautions - 10/24/11 12:57*.  The undersigned's review of the document reveals that Plaintiff was to be placed on "[p]roperty [r]estriction"; no reference to a "paper" restriction is made.  With regard to what he terms as a paper restriction, Plaintiff surmises that the alleged restriction was an intentional and deliberate act to prevent Plaintiff from "being able to file any paperwork on L.C.F. personal [sic] and their unconstitutional acts."  Doc. 53, at 5.

Plaintiff then notes the governing grievance procedure requires "Request to Staffs" to be submitted within seven days of an incident and limits each request to one issue.  *Id.*  He questions how an offender can exhaust this technical requirement if the offender is placed on a paper restriction for eight

days and further questions how exhaustion of subsequent steps in the process is possible if the first step cannot be accomplished. *Id.*

Next, Plaintiff contends that despite this impediment, he still attempted to exhaust and, as support, points to his Exhibit 3 which consists of eleven documents, the first nine of which are dated between October 25, 2011, and November 21, 2011, and are relevant to this action. *Id.* at 6; *id.* at Exhibit 3. The final two documents – dated in January 2012 and September 2011 – bear no temporal or facial relevance to the matters at issue. Doc. 53, Exhibit 3 at 10, 11. Plaintiff makes no specific reference to the relevant grievance documents but, instead, contends LCF further hindered his exhaustion efforts by returning his grievances unanswered, stating that he was on grievance restriction. Doc. 53, at 6.

Plaintiff then addresses why he should not have been placed on grievance restriction, but without contesting that he was under such restriction. *Id.* Moreover, he provides proof through his Exhibit 4 that he knew he had been placed on restriction for the twelve-month period beginning on September 12, 2011 and ending on September 12, 2012, and that he had been specifically advised that he was "required to follow steps outlined in Section IX of OP-090124 prior to submitting a grievance at any level." *Id.* at Exhibit 4.

The remainder of Plaintiff's response brief consists of general complaints

about the grievance procedure and how is it generally administered as well as his advice to the DOC on how to correct and improve the policy.  Doc. 53, at 7-10.

Attached to Plaintiff's response is his sworn affidavit.  *Id.* at Exhibit 2. There, he avers he was placed on 'paper restriction' from October 24, 2011, until November 2, 2011, that he "was not allowed to possess any paper or writing supplies," and that he was not permitted to send or receive mail during this time period.  *Id.* at 1.  He then makes the following specific averments:

> 6.   That although big "paper restriction" signs were posted on my door some staff still broke the <u>made up restriction</u> and allowed me to write a medical request in front of them.
>
> 7.   That my neighbors in Cell A - 206 in (SHU) slid me Request to Staffs and writing paper and pen under my door using a string and comb, known as a Cadillac.
>
> 8.   That I would write a Request to Staff, or letter and send it back to my neighbor in Cell A - 206, so they could put it in their door to mail out for me because I was not allowed to write R.T.S., grievances, appeals, or letters, so they helped me out two (2) times.

*Id.* at 1-2.

In the remainder of his affidavit, Plaintiff asserts that the DOC grievance procedure does not authorize a paper restriction, that he was denied his right to write requests to staff, grievances, and appeals from October 24, 2011, until November 2, 2011, that his placement on grievance restriction further hindered exhaustion efforts, and that the grievance system was flawed.  *Id.* at 2-4.

**D.     Defendants' entitlement to summary judgment.**

The question now becomes whether Plaintiff has met his burden of establishing a genuine dispute as to any material fact.  His overarching argument is that the grievance process was unavailable to him.  This argument has two components.  The first is that his placement on paper restriction prevented him from writing requests to staff for an eight-day period, thereby foreclosing his opportunity to invoke the grievance process since a DOC offender must submit a request to staff within seven days from the date of an incident.  The second prong of the argument is that, despite the paper restriction, he still made an effort to exhaust but "the review authority would not look at my grievances because I was placed on grievance restriction."  *Id.* at ¶ 13.

**1.     Grievance restriction.**

Turning first to Plaintiff's grievance restriction argument, nothing about Plaintiff's placement on grievance restriction hindered his efforts to exhaust his administrative remedies.  The policy does not prevent an inmate on grievance restriction from filing grievances, thereby making the remedy unavailable – the inmate must simply provide additional documentation when doing so.  *See Thomas v. Parker,* 609 F.3d 1114, 1119 (10th Cir. 2010) (affirming the district court's rejection of the claim that placement on grievance restriction made the exhaustion process unavailable).  Thus, this component of Plaintiff's claim of

unavailability fails as a matter of law.[1]

### 2.   Paper restriction while in therapeutic seclusion.

With regard to the unavailability of the administrative process due to the conditions imposed in connection with Plaintiff's therapeutic seclusion, Plaintiff has sworn that he was on paper restriction and could not write or file a request to staff for the eight-day period from October 24, 2011, until November 2, 2011. Doc. 53, at Exhibit 2, ¶¶ 9-12.  Nonetheless, he has also sworn that "he still made efforts to try to exhaust."  *Id.* at ¶ 13.  Those efforts are the apparent subject of his averments in paragraphs 6, 7, and 8 of his sworn affidavit:  despite the paper restriction, staff allowed him to write a medical request in their presence; his neighbors provided him with a pen and "Request to Staff" forms; he would then write a request to staff or letter and send it back to his neighbors for "mailing." *Id.* at ¶¶ 6, 7, and 8.  These paragraphs obviously serve to explain how Plaintiff was able to file both a request to staff on October 25 regarding the issues in his

---

[1]     Plaintiff does not dispute the fact that he was able to timely submit a request to staff regarding his Count I excessive force claim as well as a timely medical request regarding his Count III deliberate indifference claim.  Thus, he can only maintain that the grievance process was unavailable to him at the formal grievance stage or later and his only claim of unavailability is his placement on grievance restriction, an argument that has failed as a matter of law.  Consequently, and without regard to Plaintiff's paper restriction argument, Defendants have established as a matter of law that Plaintiff failed to exhaust his administrative remedies with regard to his excessive force claim in Count I of his complaint and his Count III claim of deliberate indifference.

Count I excessive force claim, Doc. 32, Att. 22, and the medical request on October 27 complaining of his injuries. *Id.* at Att. 25.

Plaintiff's averments in paragraphs 6 and 8 plainly contradict, not the Defendants' evidence, but Plaintiff's own declaration in his complaint – made under penalty of perjury – that he had *not* "previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of [in his four counts]." Doc. 1, at 5. Thus, in an attempt to square the informal relief that Defendants established Plaintiff unquestionably sought during this eight-day period with his claim that a paper restriction prevented him from seeking *any* administrative relief, Plaintiff has created an inconsistency in his own sworn statements.

Apart from Plaintiff's impeachment of his own sworn declarations, with regard to the eight-day property restrictions, that restriction, no doubt, could have prevented him from having any writing material in his cell.  The unavailability of writing materials in a cell does not equate, however, with unavailability of the grievance process.  Plaintiff's own affidavit establishes that LCF staff allowed him "to write a Medical Request in front of them," thus disavowing his claim of an unavailable grievance process.  Doc. 53, at Exhibit 2, ¶ 6.

16

"[T]he inmate . . . bears the burden of establishing that prison officials made an administrative remedy unavailable to him." *Whitmore v. Jones,* 456 Fed. Appx. 747, 749 (10th Cir. 2012) (citing *Tuckel v. Grover,* 660 F.3d 1249, 1254 (10th Cir. 2011)).  Nowhere does Plaintiff state that during this eight-day period he sought and was denied the opportunity to complete and submit a Request to Staff or a Request for Medical Services by LCF staff.[2]

Plaintiff's response fails to create a genuine issue of material fact with regard to the availability of administrative remedies.  Consequently, Defendants have affirmatively established that Plaintiff failed to exhaust his administrative remedies as to all claims prior to initiating this § 1983 action and are entitled to summary judgment as a matter of law.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, it is the recommendation of the undersigned that Defendants' motion for summary judgment, Doc. 33, be granted.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 20th day of March, 2013, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are

---

[2]    In addition, as to Plaintiff's Counts III and IV, in which he asserts deliberate indifference and cruel and unusual punishment for a period ending on November 1, 2011, Plaintiff was no longer in therapeutic seclusion after that time.  There is no evidence that he submitted a request to staff within seven days from the end of this period.

17

further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned in the present case.

IT IS SO ORDERED this 28th day of February, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE